UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


MAGEE                                          CIVIL ACTION

VERSUS                                         NO: 11-1351

ENSCO OFFSHORE COMPANY                         SECTION: "J"(2)

**ORDER AND REASONS**

Before the Court are Tobias, Inc.'s Motion for Summary
Judgment (Rec. Doc. 31), Ensco Offshore Co.'s opposition thereto
(Rec. Doc. 35), and Tobias, Inc.'s reply (Rec. Doc. 45); and
Ensco Offshore Co.'s Cross-Motion for Summary Judgment (Rec. Doc.
33), Tobias, Inc.'s opposition thereto (Rec. Doc. 36), and Ensco
Offshore Co.'s reply (Rec. Doc. 43).  The motions are before the
Court on supporting memoranda and without oral argument.  Having
considered the motions and legal memoranda, the record, and the
applicable law, the Court now issues its ruling.


**PROCEDURAL HISTORY AND BACKGROUND FACTS**

The claim at issue is a crossclaim filed by defendant
Tobias, Inc. ("Tobias") against co-defendant Ensco Offshore Co.

("Ensco"). Tobias seeks indemnity and defense from Ensco for any amount for which Tobias may be liable to the plaintiff, Kendall K. Magee. Magee, Ensco's employee, allegedly was injured during a slip and fall on or about March 12, 2011 while he was back loading Tobias's vessel, the M/V MS. CHRISTINE. Both Tobias and Ensco had contracts with Chevron U.S.A., Inc. ("Chevron") pertaining to Chevron's oil and gas operations on the Outer Continental Shelf in the Gulf of Mexico. Chevron is not a party to this litigation.

Pertinent to the work being performed at the time of Magee's alleged slip and fall, Ensco was operating the jack-up rig *ENSCO 82*, which it owned, under a Master Drilling Contract ("MDC") that it had with Chevron. Tobias was operating the MS. CHRISTINE as a work/supply vessel under a Master Time Charter ("MTC") with Chevron. While back loading the MS. CHRISTINE from the *ENSCO 82*, plaintiff Magee allegedly was injured, and he filed his complaint with this Court on June 8, 2011, pursuant to the Jones Act and general maritime law. Tobias tendered its defense to Ensco, seeking indemnity and defense. When Tobias received no confirmation that Ensco would undertake Tobias's defense, Tobias filed a crossclaim against Ensco and a third party demand against Ensco's unidentified insurer. It is Tobias's crossclaim against

Ensco that is the subject of the co-defendants' cross-motions for summary judgment.

The MDC, which was signed by Chevron as "Company" and Ensco as "Contractor," contains a Schedule G, "Agreement for Mutual Indemnity and Waiver of Recourse," which provides for reciprocal indemnity agreements among parties who qualify as "Signatories" under the MDC. Tobias's crossclaim asserts that Tobias is a "Signatory" to whom Ensco owes an indemnity and insurance obligation under the MDC with respect to Ensco's employee's (Magee's) personal injury claim levied against Tobias in this lawsuit. Tobias and Ensco have both moved for summary judgment on Tobias's crossclaim.

## THE PARTIES' ARGUMENTS

Tobias argues that the MDC obligates Ensco, as Chevron's contractor, to indemnify and defend Tobias, as another contractor of Chevron. Tobias asserts that as a result of Ensco's negligent failure to defend and indemnify Tobias, the latter has incurred attorney's fees and costs in defending itself against Magee's lawsuit. It asserts that it is entitled to all costs, interest, expenses, attorney's fees, settlements, judgments, or other amounts it may incur arising from this litigation.

Ensco argues several reasons why it does not owe indemnity to Tobias under the MDC.  First, Tobias is not a part of the "Company Group" to whom Ensco owes an indemnity obligation because the fact that Tobias's vessel was operating under a time charter invokes an exclusionary clause with respect to the "Company Group" definition.  Second, Schedule G, which permits entities not parties to the MDC to become "Signatories" to whom Ensco may owe an indemnity obligation, excludes indemnification with respect to "transportation services," in which Magee was involved at the time of his alleged injury.  Third, Tobias cannot invoke the benefit of indemnity under Schedule G because it is not a "Signatory," for several reasons.  It did not sign Schedule G.  It entered a "formal contract" with Chevron, so as to invoke an exclusionary clause that is an exception to the indemnity provided in Schedule G.  Tobias did not sign a "substantially similar agreement" in signing its MTC with Chevron.

Tobias argues, first, that it need not fit within the "Company Group" definition because Schedule G overrides that provision.  It also argues that even if it needs to invoke that definition, the time charter exclusion only applies to vessels properly speaking, rather than to Tobias, who is a vessel owner.  Second, Tobias argues that the Schedule G exclusion pertaining to

alleged Signatories engaged in "transportation services" does not apply to the back loading in which Magee was engaged at the time of his alleged injury. Third, Tobias argues that it is a "Signatory" under Schedule G and thus can claim indemnity from Ensco. Specifically, it argues that it need not have signed Schedule G, but rather its signing of a substantially similar agreement makes it a Signatory.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." <u>Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.</u>, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory

allegations or unsubstantiated assertions.  <u>Little</u>, 37 F.3d at

1075. A court ultimately must be satisfied that "a reasonable

jury could not return a verdict for the nonmoving party."  <u>Delta</u>,

530 F.3d 399.

If the dispositive issue is one on which the moving party

will bear the burden of proof at trial, the moving party "must

come forward with evidence which would 'entitle it to a directed

verdict if the evidence went uncontroverted at trial.'"  <u>Int'l</u>

<u>Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th

Cir. 1991) (citation omitted).  The nonmoving party can then

defeat the motion by either countering with sufficient evidence

of its own, or "showing that the moving party's evidence is so

sheer that it may not persuade the reasonable fact-finder to

return a verdict in favor of the moving party."  <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving party

will bear the burden of proof at trial, the moving party may

satisfy its burden by merely pointing out that the evidence in

the record is insufficient with respect to an essential element

of the nonmoving party's claim.  <u>See</u> <u>Celotex</u>, 477 U.S. at 325.

The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts

showing that a genuine issue exists.  <u>See</u> <u>id.</u> at 324.  The

nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  See, e.g., id. at 325; Little, 37 F.3d at 1075.


## DISCUSSION

The parties do not dispute that both the MTC and the MDC are governed by maritime law.[1]  Furthermore the MTC and MDC both contain general maritime law choice-of-law clauses.  Rec. Doc. 31-4, at 14; Rec. Doc. 31-5, at 38.   Generally, indemnity agreements in maritime contracts are enforceable.  See Theriot v. Bay Drilling Corp., 783 F.2d 527, 540 (5th Cir. 1986) (applying federal maritime law to interpret indemnity clauses of drilling contract).  Ensco does not argue that the indemnity provisions at issue are legally null—only that they are inapplicable.  "The interpretation of a contractual indemnity provision is a question of law."  Becker v. Tidewater, Inc., 586 F.3d 358, 369 (5th Cir. 2009).  "A maritime contract containing an indemnity agreement . . . should be read as a whole and its words given their plain meaning unless the provision is ambiguous."  Id. (quotation marks

---

[1] Tobias argues that the parties chose to be governed by maritime law and that the MDC and MTC are maritime contracts.  Rec. Doc. 31-1, at 6-8. Ensco, in its response to Tobias's statement of uncontested material facts, admits that "[b]oth the [MTC] and the [MDC] are maritime contracts, such that Federal law applies to the exclusion of state law."  Rec. Doc. 35-4, at 3.

omitted).  "Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties."  Breaux v. Halliburton Energy Servs., 562 F.3d 358, 364 (5th Cir. 2009) (quoting Weir v. Fed. Asset Disposition Ass'n, 123 F.3d 281, 286 (5th Cir. 1997)).  The Court turns to the contracts at issue.

## A.  Does the Schedule G Exclusion of "Transportation Services" Apply to Tobias?

Based on the focus of the arguments in the parties' briefs, Schedule G appears to be the primary basis for Tobias's indemnity claim.  Schedule G is expressly incorporated into the main body of the drilling contract.[2]  It is an "Agreement for Mutual Indemnity and Waiver of Recourse."  Rec. Doc. 31-8, at 1.  Its essence is to permit Chevron's contractors, who otherwise lack privity with respect to the Ensco-Chevron MDC, to obtain indemnity among each other if they qualify as "Signatories" under MDC Schedule G:

> In consideration of the premises and the reciprocal covenants of the other Signatories, the Signatories agree as follows:
>
> 1.  *Each Signatory shall be liable and shall release,*

---

[2] "The following schedules are attached hereto and made a part hereof for all purposes. . . . Schedule G - Agreement for Mutual Indemnity and Waiver of Recourse."  Rec. Doc. 31-5, at 8.

> *defend, indemnify and hold harmless all the other
> Signatories* and their respective parent,
> subsidiary and affiliated companies, agents,
> employees, directors, officers, servants, vessels
> and insurers, *from and against any and all* costs,
> expenses (including reasonable attorneys' fees)
> and *liabilities incident to claims*, demands or
> causes of action of every kind and character,
> whether in personam or in rem, *brought by any
> person or party, for injury to*, illness or death
> of *any employee*, contractor, agent or invitee *of
> said Signatory* or for damage to or loss of
> equipment or property owned by said Signatory or
> its contractors (or in possession of said
> Signatory by virtue of an arrangement made with an
> entity which is not a Signatory) *which injury*,
> illness, death, damage or loss *arises out of* or is
> incident to *the Operations*, regardless of the
> cause of such injury, illness, death, damage or
> loss even though caused in whole or in part by a
> pre-existing defect, the sole or concurrent
> negligence (either active or passive), strict
> liability or other legal fault of Chevron, or
> other Signatories.

Rec. Doc. 31-8, at 1 (emphasis added). Focusing on the

emphasized language, which is potentially relevant to the instant

case, if both Tobias and Ensco qualify as "Signatories," then

Signatory Ensco must indemnify Signatory Tobias for any liability

incident to a personal injury claim brought by Ensco's employee,

Magee, to the extent the injury arises out of the Operations.

Tobias argues that it is a Signatory and thus is entitled to

indemnity from Ensco according to the terms of Schedule G. A

"Signatory" is defined as a contractor of Chevron who signs a

counterpart of the Schedule G agreement or a substantially

similar agreement relating to the "Operations." <u>Id.</u> Tobias must prove that it meets this definition to prevail on its indemnity crossclaim under Schedule G.

Pretermitting for the moment whether Tobias has otherwise proven that it is a Signatory, Ensco argues that even if Tobias is a Signatory, an exclusion for transportation services bars Tobias's claim. That provision of Schedule G provides:

> 11. The release, hold harmless, and defense and indemnity provisions contained herein with respect to each Signatory are *not applicable in connection with any transportation services of any kind*, whether via helicopter, vessel (excluding drilling vessels of any type), airplane, fan boat or otherwise, *unless caused by the sole negligence of Signatory*.

Rec. Doc. 31-8, at 3 (emphasis added). Ensco argues that the effect of this provision is that even if Tobias is a Signatory, Schedule G's indemnity provisions do not apply because Tobias was a company providing transportation services. Ensco argues that because Magee alleges that he was back loading the MS. CHRISTINE at the time of the accident, his claim is connected with the provision of transportation services, and the exclusion in Paragraph 11 applies. Tobias argues that "transportation services" only refers to the carriage of passengers.

The phrase "transportation services" is not defined in Schedule G. The parties do not point to any part of the MDC that defines it. Resorting to general contractual interpretive principles, a contract's words should generally be given their plain meaning. <u>Becker</u>, 586 F.3d at 369. The phrase "transportation services" literally includes loading cargo from a jack-up rig to a vessel that is used to transport goods to and from the rig. It is undisputed that "Magee has alleged that he was injured while performing cargo back loading services aboard the M/V MS. CHRISTINE." Rec. Doc. 35-4, at 2. Therefore, under a plain reading of the phrase "transportation services," that phrase would apply to Magee's loading of cargo onto a vessel that is under time charter for Chevron's use.

Tobias cites Schedule D of the MDC to argue that it was not performing "transportation services" at the time of the accident. Schedule D is a "Drilling Order" between Chevron and Ensco. Rec. Doc. 31-6, at 1. Part B concerns "Equipment, Supplies, and Services to be Furnished" and allocates responsibility for these items between Chevron and Ensco. <u>Id.</u> at 8. "No. 300" addresses items pertaining to "Marine Requirements, *Transportation Issues*." <u>Id.</u> at 9 (emphasis added). This section has a couple items addressing specific transportation issues:

306     *Supply*/anchor handing *vessels and crews* for anchor
        handling and *for transporting* CONTRACTOR's and
        COMPANY's *equipment and supplies* between the Drilling
        Unit and Operations Base.

***

311     *Labor* and equipment *at Operations Base and dockside to
        load and unload* CONTRACTOR's and COMPANY's supplies and
        equipment from supply vessels.

312     *Labor required aboard supply vessel when along side of
        the Drilling Unit to unload or load CONTRACTOR's and/or
        COMPANY's supplies and equipment* under normal operating
        conditions.  COMPANY to provide labor to unload or load
        supplies other than normal support at the drilling
        site.

Id. at 10 (emphasis added).  Even if "transportation services"

may refer to the carriage of passengers, it also refers to the

carriage of goods or supplies.  The above-quoted items in

Schedule D, under the heading "Transportation Issues," read

together, show that the loading and unloading of vessels

pertaining to Chevron's operations on the *ENSCO 82* pertain to

"transportation" as that term is commonly understood and as it is

used in Schedule D of the MDC.  The Court finds that the activity

in which Magee alleges he was engaged on the date of the incident

constitutes "transportation services" under the meaning of

Schedule G's exclusionary clause.

    Because of the connection, or relationship, of the instant

claim to transportation services, Schedule G, Paragraph 11

provides that a Signatory does not owe indemnity with respect to such services. This raises the issue of whether Ensco—a contracting party to the MDC—would also qualify as a "Signatory" such that its potential indemnity obligation under Schedule G would fall under the transportation services exclusion. Who is a "Signatory" to Schedule G is defined in the prefatory premises to the Schedule G indemnity agreement:

> (a) Chevron U.S.A. Inc. *("Chevron") and its contractors have entered into* Master Service Orders and Agreements, *Drilling Contracts*, Time Charters and other similar contracts regarding the performance of work or services in connection with Chevron's operations in the Gulf of Mexico ("Operations");

> (b) *The contractors have signed*, or may sign, *counterparts of this Agreement or* substantially similar agreements relating to the Operations (*hereinafter individually called "Signatory" or collectively called "Signatories"*); . . . .

Rec. Doc. 31-8, at 1 (emphasis added). The Court concludes that even though Ensco is also the party in immediate contractual privity with Chevron under the MDC, Ensco also is a "Signatory" to Schedule G. Ensco is a "contractor" of Chevron who has signed a "counterpart of the Agreement" in Schedule G—namely, one of the many Schedule G agreements that the MDC contemplates will be signed by the various contractors with whom Chevron contracts with respect to its Gulf of Mexico operations. Because Ensco is

13

a Signatory, it generally does not owe indemnity to Tobias
pursuant to Schedule G under the facts of this case due to the
transportation services exclusion.

There is, however, an important exception to the exclusion:
"unless caused by the sole negligence of Signatory." Rec. Doc.
31-8, at 3. Under this exception, if the loss for which
indemnity is sought was caused by Signatory Ensco's sole
negligence, the result is that even if transportation services
are involved, Ensco's indemnity obligation extends to Tobias
(assuming Tobias is a Signatory). Put succinctly, (1) the
general rule of Schedule G would permit Tobias's recovery if it
is a Signatory; (2) the transportation services exclusion of
Paragraph 11 applies to apparently eviscerate Tobias's indemnity
recovery; but (3) exception gets us back to the general rule, if
Ensco is solely negligent.[3] There has been no briefing on the
issues of fault allocation between the two defendants in this
case. Neither defendant argues that there is no factual issue
regarding the sole negligence of either party. As a result,

_____

[3] Additionally, the Court notes that Schedule G, Paragraph 11 of the
MDC, as written, does not make sense. It states that the indemnity provisions
are not applicable in connection with transportation services, "unless caused
by the sole negligence of Signatory." Rec. Doc. 31-8, at 3. As written, the
"unless caused by sole negligence" clause modifies "transportation services."
It is unclear how negligence could cause transportation services. The only
reasonable interpretation is that Paragraph 11 means that where the *injury* is
caused by sole negligence, this scenario provides an exception to the
transportation services exclusion.

14

there is a genuine dispute of fact as to whether the transportation services exclusion applies, and therefore whether Tobias could recover against Ensco on its crossclaim. Unless it is shown that as a matter of law, Ensco was solely negligent, Tobias cannot avoid the transportation services exclusion, and therefore cannot recover under Schedule G. For that reason, Tobias's motion for summary judgment must be denied. However, the analysis with respect to Ensco's motion for summary judgment continues. Namely, if Ensco can point to some other aspect of the MDC that shows no genuine dispute that the indemnity claim fails as a matter of law, its motion may be granted.

**B. Must Tobias Have Signed Schedule G to Be a "Signatory"?**

As stated previously, to recover under Schedule G, Tobias must be a "Signatory" to Schedule G, as that term is defined therein. Thus, the next logical step is to address Ensco's arguments that as a matter of law, Tobias is not a Signatory. Ensco argues that because Tobias has not signed a Schedule G, it is not a Signatory. It avers that Tobias has not produced a signed copy of Schedule G in discovery. Ensco's argument is contradicted by the plain language of Schedule G, which defines a "Signatory" as a contractor who has signed, or who may sign, a counterpart of the agreement in Schedule G or a "substantially

similar" agreement related to the "Operations." Rec. Doc. 31-8, at 1. Although there is no evidence in the record of Tobias having signed its own counterpart of Schedule G, Schedule G states that a contractor's execution of a substantially similar agreement makes it a Signatory. Tobias need not have signed a Schedule G to qualify as a Signatory.

## C. Was Tobias a Signatory to Schedule G?

Because there is no evidence in the record showing that Tobias executed a counterpart of the Schedule G agreement, in order to avoid dismissal of its crossclaim for indemnity, it must at least raise a genuine issue of fact as to whether it has signed a substantially similar agreement relating to the "Operations." Tobias argues that its MTC with Chevron is such an agreement. This raises two issues: (1) whether the MTC relates to the Operations, and (2) whether the MTC is "substantially similar" to the agreement in Schedule G of the MDC.

The parties do not appear to dispute that the MTC relates to the Operations. Ensco does not advert to any evidence contradicting Tobias's evidence that Magee was back loading the MS. CHRISTINE at the time of alleged injury.[4] It is undisputed

_____

[4] See Rec. Doc. 36-2 (Ensco "Employee Injury and Illness Report," stating that Magee "was back loading Ms. Christine").

that the MS. CHRISTINE transported goods and materials to and

from the *ENSCO 82*, which was servicing Chevron's drilling

operations on the date of the incident.[5]  Therefore, the back

loading that was being performed on the date of the incident fits

the broad definition of "Operations" because it was "the

performance of work or services in connection with Chevron's

operations in the Gulf of Mexico."  Rec. Doc. 31-8, at 1.

Furthermore, the MTC states that it is related to Chevron's

operations in the Gulf of Mexico.[6]  The Court finds that the MTC

relates to Chevron's "Operations" within the meaning of MDC

Schedule G's definition of "Signatory."

The second, more involved issue is whether the MTC is

substantially similar to the indemnity agreement in Schedule G of

the MDC.  As an initial matter, the Court is not persuaded by

Ensco's argument that Tobias may not "bypass the 'signatory

---

[5] See Rec. Doc. 36-1, at 1-2 (where Ensco stated as uncontested that the
MS. CHRISTINE was used to transport goods and materials to the rig for
Chevron, Tobias denied this assertion as written, but admitted that the MS.
CHRISTINE was used to transport goods and materials to and from the *ENSCO 82*);
Rec. Doc. 35-4, at 2 (uncontested that on the date in question, the *ENSCO 82*
was providing drilling services to Chevron pursuant to the MDC).

[6] See Rec. Doc. 31-4, at 2 (MTC stating in the recitals that Chevron
desires "to hire watercraft to service ChevronTexaco's operations in the Gulf
of Mexico").

requirement'" through invoking Paragraph 7 of Schedule G.[7]

Paragraph 7 provides:

> 7.  *Any contractor*, consultant, subcontractor, etc., *performing work or service for Chevron* or other Signatory in connection with the Operations **which has not entered into a formal contract for the performance of such work or service** *may nevertheless become a Signatory by signing a counterpart of this Agreement or a substantially similar agreement* which shall govern, as to the subject of this Agreement, the relationship between such new Signatory and the other Signatories and also by extension of its relations with Chevron.

Rec. Doc. 31-8, at 2 (emphasis added). Tobias has entered into a formal contract for performance of its work for Chevron because it entered into the MTC. However, Paragraph 7 does exclude from the definition of "Signatory" those who have not entered into formal contracts with Chevron. It expresses no deviation from the rule that a contractor may become a Signatory through signing a "substantially similar agreement." Rather, it states that even a contractor with no formal contract with Chevron may become a Signatory through signing an agreement that is substantially

---

[7] To a certain extent, the Paragraph 7 argument is a case of two ships passing in the night. Ensco states that "Tobias argues that it qualifies as a signatory to Schedule G through an exception to the 'signatory requirement' in Paragraph 7." Rec. Doc. 35, at 4. However, Tobias did not characterize Paragraph 7 as an exception, but rather stated that "Section 7 of Schedule G further supports the intent of the parties to include any contractor who was performing work or service for Chevron or other Signatories . . . .". Rec. Doc. 36, at 7.

similar to the indemnity agreement of Schedule G.  Paragraph 7 is
not applicable in this case.

Turning to the dispositive arguments, the Court considers
whether the MTC contains an indemnity agreement that is
substantially similar to the indemnity agreement in Schedule G of
the MDC.  Tobias argues that the MDC and MTC contain
substantially similar agreements.  It argues that the MDC between
Ensco and Chevron contains "knock for knock" indemnity
agreements, and that the MTC between Tobias and Chevron similarly
contains reciprocal indemnity agreements that require a minimum
of $5 million in insurance coverage and contain the same general
maritime law choice-of-law clause.  Ensco argues that the
agreements are not substantially similar because the MTC does not
have knock-for-knock indemnity provisions, but only requires
Tobias to indemnify "Indemnitees," defined under MTC Section 1.4
to exclude contractors of Chevron.  Schedule G does not define
the phrase "substantially similar."  The Court concludes that,
for the reasons that follow, as a matter of law, the agreements
are not substantially similar.

The quintessential interpretive choice is the subject matter
of the comparison.  There is a requirement that two contracts be
similar.  Which two contracts?  Tobias's interpretation is that

the two contracts to be compared are the Schedule G agreement *among contractors*, and a time charter or other contract *between Chevron and a contractor*. Another possible interpretation is that for two contracts to be compared as "similar" as that term is used, they must both be contracts *among contractors*. Based upon a reading of Schedule G as a whole, the Court is persuaded that the latter interpretation is the correct one. Tobias's contrary assertion is that Schedule G and the MTC are similar in that they both have indemnity provisions. But Schedule G as a whole envisions something else—that for a contractor of Chevron to become a Signatory, it must do something other than sign an agreement with Chevron that contains an indemnity with wording akin to that in Schedule G.

As previously discussed, the methodology for becoming a Signatory is for a Chevron contractor to sign an agreement that is substantially similar to Schedule G. Schedule G is an indemnity agreement among contractors of Chevron, *not* among Chevron and its contractors.[8] Accordingly, a requirement for

---

[8] Paragraph 10 demonstrates this. Although Schedule G is an attachment to a contract to which Chevron is a party, Paragraph 10 recognizes that the undersigned Signatory (Ensco in this case) has a "Drilling Contract" that "shall govern the allocation of risk, defense, and indemnity between Chevron and the undersigned Signatory." Rec. Doc. 31-8, at 2. Paragraph 10 then states that Schedule G is not intended to modify or supplement the contract in effect between Chevron and the Signatory (Ensco in this instance). Id. at 2-3.

Schedule G and the comparable other agreement to be

"substantially similar" is that both agreements are between and

among contractors.   Schedule G makes this distinction between

Chevron-contractor contracts on the one hand, and contractor-

contractor contracts on the other hand:

> 5.    Chevron shall use all reasonable endeavors to have
> those of its contractors whom are involved in the
> Operations become Signatories.

Rec. Doc. 31-8, at 2.

Paragraph 5 cannot be squared with Tobias's interpretation

that its contract with Chevron is substantially similar to

Schedule G.   Paragraph 5 requires Chevron to endeavor to get its

contractors to become Signatories, and by extension, to get them

to sign agreements substantially similar to Schedule G.   Tobias's

interpretation would imply that Chevron could comply with

Paragraph 5 by endeavoring to get its contractor to sign a

contract with itself which would contain an indemnity agreement.

This is an absurd result.   If a contractor, like Tobias, could

become a Signatory through signing an indemnity agreement with

Chevron, Chevron would be forced to comply with Paragraph 5

through use of its reasonable endeavors to get its contractor—who

by definition *already has a contract with it*—to become a

Signatory through signing a contract with it.   This would make

Paragraph 5 not only absurd, but also superfluous and an illusory obligation, which would violate at least one principle of contractual interpretation.[9]

One might make the counterargument that Tobias's suggested reading does not necessarily conflict with Paragraph 5. One could argue that some of Chevron's contractors might not have initially contracted for indemnity provisions with respect to Chevron, and that Paragraph 5 provides that Chevron should endeavor to sign indemnity agreements with its contractors, in order to create agreements substantially similar to Schedule G, in order to make those contractors Signatories. Even ignoring the potential implausibility as a matter of practice that Chevron and its contractors would not already have indemnity agreements in their contracts, such an argument flies in the face of Paragraph 10's recognition that an indemnity agreement that Chevron has with a Signatory is separate from an indemnity agreement between two Signatories, i.e., a Schedule G-type agreement:

> 10. *The undersigned Signatory has a* Master Service Order and Agreement, Drilling Contract, *Time Charter* or other similar contract *in effect with*

---

[9] All the provisions of a contract should be read together. <u>Breaux</u>, 562 F.3d at 364. This should be done so as to avoid making any one provision a superfluity. 11 Williston on Contracts § 32:5 (4th ed.).

> *Chevron, which shall govern the allocation of*
> risk, defense and *indemnity between Chevron and*
> *the undersigned Signatory*. Nothing contained
> herein is intended to modify, amend or supplement
> the contract in effect between Chevron and each
> party that becomes a Signatory hereto.

Rec. Doc. 31-8, at 2-3 (emphasis added). In Tobias's case, it

has a "Time Charter" with Chevron—the MTC. Paragraph 10 suggests

that if Tobias becomes a Signatory, the time charter (MTC)

continues to govern the allocation of indemnity between Chevron

and Tobias, and nothing in Schedule G is intended to modify that

indemnity already in effect. This paragraph contemplates that a

Signatory will have two separate contracts: an indemnity

agreement in its contract with Chevron, and a separate agreement

that is substantially similar to Schedule G. Therefore, the

separate agreement that is "substantially similar" cannot be the

indemnity agreement with Chevron, as Tobias argues.[10]

Although the foregoing plain language suffices to make the

point, it is also important that the Court's construction accords

with the stated purpose for which Schedule G was crafted. First,

the premises recognize (a) Chevron-contractor contracts and (b)

---

[10] The language at the end of Paragraph 10 is the strongest: "Nothing
[in Schedule G] is intended to modify, amend or supplement the contract *in
effect* between Chevron and each party *that becomes a Signatory* hereto." Rec.
Doc. 31-8, at 3 (emphasis added). This implies that a party "that becomes a
Signatory" will have a preexisting contract with Chevron "in effect."
Therefore, one cannot become a Signatory by signing an agreement with Chevron
that one has already signed—one that is already "in effect."

contractor-contractor contracts among Signatories as two different things:

> (a) Chevron U.S.A. Inc. *("Chevron") and its contractors have entered into* Master Service Orders and Agreements, Drilling Contracts, *Time Charters and other similar contracts* regarding the performance of work or services in connection with Chevron's operations in the Gulf of Mexico ("Operations");
>
> (b) *The contractors have signed, or may sign, counterparts of this Agreement or substantially similar agreements* relating to the Operations (hereinafter individually called "Signatory" or collectively called "Signatories"); . . . .

Rec. Doc. 31-8, at 1 (emphasis added). The contractor-contractor agreement in part (b) is the one that makes a contractor a Signatory. Second, the premises recite that the purpose of Schedule G and other substantially similar agreements is to create a scheme of indemnity among contractors, not among Chevron and its contractors:

> (d) **The Signatories** *wish to modify their relationship at law* and avoid entirely disputes as to their liabilities for damage or injuries to their respective equipment, property or employees *by providing for a system of mutual indemnity* **between the Signatories** with respect to their respective personnel, equipment and property.

Id. (emphasis added). It would not advance the purpose of this mutual indemnity scheme among contractors for Tobias to contract with Chevron, rather than with other contractors, in order to

obtain the benefits of the scheme. In light of the purpose of Schedule G, and according to its plain language, it was not enough for Tobias to contract for an indemnity scheme between itself and Chevron. It would have had to execute an agreement of indemnity with other contractors. It did not. It has submitted no evidence to genuinely dispute that it signed neither a counterpart to Schedule G nor a substantially similar agreement.

Based on the foregoing analysis, the Court holds that for an agreement to be "substantially similar" to Schedule G, it must essentially duplicate what Schedule G attempts to accomplish. Schedule G attempts to accomplish an indemnity scheme among contractors of Chevron, with respect to Chevron's operations in the Gulf of Mexico. Because the MTC is a contract between Chevron and Tobias rather than between Tobias and another contractor of Chevron, it is not an attempt to achieve Schedule G's mutual indemnity scheme and thus is not substantially similar to Schedule G. Because the MTC and Schedule G are not substantially similar, and because Tobias has introduced no evidence that it executed a Schedule G, Tobias is not a Signatory. Because Tobias is not a Signatory, it may not obtain the benefit of indemnity under Schedule G of the MDC. Its claim for indemnity under Schedule G fails as a matter of law.

**D. Does the Exclusion of Time Charters from the "Company Group" Defeat Tobias's Indemnity Claim?**

Even though Tobias's claim under Schedule G does not survive summary judgment, Tobias also sues pursuant to the main body of the MDC.[11]  Ensco argues that because of an exclusion pertaining to vessels under time charter, Tobias may not claim indemnity under the MDC.  Article 8 of the MDC, entitled "Liability and Indemnity," provides, in pertinent part:

> **801   LOSS OF CONTRACTOR'S DRILLING EQUIPMENT**
>
> [ ] *CONTRACTOR shall* hold harmless, *indemnify*, release, and defend *COMPANY*, *its* subsidiary, affiliated and related companies and its and their working interest owners, co-lessees, co-owners, joint venturers, *contractors and subcontractors of any tier* **(but excluding vessels under Time Charter to COMPANY)** and any others for whom any of the foregoing may be acting and the agents, directors, officers, employees of any of them *(hereinafter collectively referred to as "COMPANY GROUP") and shall assume sole responsibility and liability* at all times *for any and all damage to* or loss or destruction of CONTRACTOR GROUP's (as defined below) **equipment** . . . .

Rec. Doc. 31-5, at 28 (emphasis added).  "CONTRACTOR" is Ensco, and "COMPANY" is Chevron.  Rec. Doc. 31-5, at 7.  Therefore, the MDC provides that Ensco must indemnify Chevron and its

---

[11] See Complaint, Rec. Doc. 24, at 3, ¶ 8 (alleging that Ensco agreed in its contract with Chevron to indemnify Chevron's contractors, including Tobias); id. ¶ 9 (separately alleging that Tobias is a Signatory pursuant to the agreement in Schedule G).

contractors—excluding vessels under Time Charter to Chevron—as
part of the "COMPANY GROUP" that Ensco must hold harmless for any
damage or loss to its own equipment.  This indemnity provision,
therefore, is of little relevance *per se* because Tobias seeks
indemnification for loss due to personal injury, rather than
damage to equipment.  However, Section 801 is relevant to the
extent it defines the "Company Group," which is a term used
subsequently in the MDC.  Specifically, Section 801 states that
although a contractor of Chevron, such as Tobias, could be part
of the "Company Group" as a general matter, the exception is that
a vessel under Time Charter to Chevron is not part of the
"Company Group."  Whether this distinction makes a difference in
this case requires a turn to other more pertinent indemnity
provisions that use the term "Company Group" to define the scope
of indemnity that may be applicable to Tobias.

Section 807.1 of the MDC, which Ensco cites, uses the term
"Company Group" to delimit the scope of indemnity.  It provides,
in pertinent part:

**807  <u>GENERAL INDEMNITY</u>**

807.1          *CONTRACTOR shall* hold harmless,
               release, *indemnify,* and defend,
               *COMPANY GROUP from and against all
               claims, liabilities, and expenses*
               (including reasonable attorneys'
               fees and expenses incurred in

27

> defense of such claims) *for*
> *personal injury*, illness, disease
> or death *to CONTRACTOR GROUP's*
> *personnel* which are in any way
> connected with the performance of
> the work . . . .

Rec. Doc. 31-5, at 31-32 (emphasis added).  Section 807.1, put

simply and interpreted literally to apply to the present facts,

states that Ensco must hold the Company Group harmless from

liability for personal injury to Contractor Group's personnel,

which would include Magee,[12] to the extent the claim is connected

with performance of the work.  Accordingly, to the extent Tobias

sues as Chevron's contractor, and therefore, part of the Company

Group receiving indemnity under Section 807.1's general indemnity

provision with respect to any tort liability for Magee's alleged

injury, Tobias would have to demonstrate that the aforementioned

Section 801 Company Group exclusionary clause pertaining to

vessels under time charter does not apply.

Ensco argues that Tobias's recovery does hinge upon the

definition of "Company Group."  It avers that MDC Section 801's

exclusionary clause states that it does not apply to vessels

under time charter; that Tobias's vessel, the MS. CHRISTINE, was

---

[12] "CONTRACTOR GROUP" is defined to include Ensco's ("Contractor's") employees.  Rec. Doc. 31-5, at 29, Section 803 of MDC.  Magee is an Ensco employee.

under time charter; and therefore that Ensco does not owe indemnity to Tobias under the MDC. Tobias argues that Schedule G overrides Section 807. Tobias correctly points out that Schedule G, by its terms, does not make any reference to "Company Group" in defining any party's indemnity rights and obligations. However, this does not necessarily mean that Schedule G voids any Company Group definition that a party must meet in order to sue *under Section 807's indemnity provisions*. Indeed, Section 106 of the MDC states that "[i]n the event that there are any conflicts between the body of this Contract and the schedules attached hereto, the provisions in the body of this Contract will prevail." Rec. Doc. 31-5, at 8. Accordingly, to avoid summary judgment with respect to any claim for indemnity *under the general indemnity provision of Section 807.1*, Tobias must at least raise a genuine issue of fact regarding whether it falls within the time charter exclusion from the definition of "Company Group." This it cannot do.

As previously stated, excluded from Ensco's Section 807.1 indemnity obligation to the "Company Group" are "vessels under Time Charter to COMPANY." Rec. Doc. 31-5, at 28. Tobias argues that it is not a "vessel under Time Charter"; it is a vessel *owner* and *operator*. Rec. Doc. 36-1, at 1. Tobias suggests that

the parties to the MDC specifically chose to refer to vessels, rather than vessel owners.[13] However, an indemnity contract must be read as a whole,[14] and a literal reading—that "vessel" only refers to the thing, not the owner—makes no sense within the context of the sentence containing the exclusion. The exclusionary clause follows a list of entities that have distinct juridical personality, rather than a list of things:

> *COMPANY, its subsidiary*, affiliated and related *companies* and its and their working interest *owners*, *co-lessees*, *co-owners*, *joint venturers*, *contractors* and *subcontractors* of any tier (**but excluding vessels** under Time Charter to COMPANY) . . . .

Rec. Doc. 31-5, at 28 (emphasis added). The exclusionary clause applies to a situation where a party charters its vessel to Chevron, as is suggested by the list of juridical persons immediately prior to the exclusionary phrase. Reading Article 801 as a whole, it is unreasonable that Chevron and Ensco would have stated the parenthetical exclusion for a situation involving

---

[13] For example, Tobias posits that maritime law recognizes the distinction between a vessel owner and a vessel as an entity separate from its owner, and that the MDC implicitly recognizes this difference through the subject clause's applicability only to vessels as things. However, Tobias does not explain how this "in rem" principle would make sense as applied to the subject exclusionary clause. Further, although Tobias points out that Schedule G acknowledges that Chevron's contractors have entered into time charters with Chevron, this acknowledgment does not lead to the conclusion that a vessel owner must be entitled to indemnity under a separate part of the MDC—Section 807.1.

[14] <u>Becker</u>, 586 F.3d at 369.

time charters, for that carve-out only to apply to vessels as "things." Tobias's vessel was under time charter to Chevron during the events in question. Therefore, the Court finds as a matter of law that the exclusion of vessels under time charter from the "Company Group" defeats Tobias's indemnity claim under the general indemnity provisions of the MDC. As a matter of law, Tobias cannot recover under MDC Article 807.1. Therefore, Ensco is entitled to judgment as a matter of law.

## CONCLUSION

Tobias is not a Signatory entitled to indemnity under Schedule G of the MDC, and it may not recover under the general indemnity provisions of the MDC. Accordingly,

**IT IS ORDERED** that Tobias's Motion for Summary Judgment (Rec. Doc. 31) is hereby **DENIED**, and that Ensco's Cross-Motion for Summary Judgment (Rec. Doc. 33) is hereby **GRANTED**, **DISMISSING WITH PREJUDICE** Tobias's crossclaim against Ensco (Rec. Doc. 24).

New Orleans, Louisiana, this 18th day of May, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE