UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MAGEE                                              CIVIL ACTION

VERSUS                                             NO: 11-1351

ENSCO OFFSHORE CO.                                 SECTION: "J" (2)

**ORDER AND REASONS**

Before the Court are Defendant, Ensco Offshore Company ("Ensco")'s **Motion for Partial Summary Judgment on the Claims for Unseaworthiness (Rec. Doc. 55)**, Defendant Tobias, Inc. ("Tobias") and Plaintiff's oppositions to same **(Rec. Docs. 56, 63, respectively)**, and Ensco's supplemental memorandum thereto **(Rec. Doc. 62)**. Having considered the motion, the parties' legal memoranda, the record, and the applicable law, the Court finds that Ensco's motion should be **GRANTED** for the reasons set out more fully below.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This action arises out of personal injury claims brought under general maritime law and the Jones Act. On June 8, 2011, Plaintiff Kendall Magee ("Mr. Magee") filed the instant suit

1

naming Ensco as a Defendant. (Rec. Doc. 1) On September 21, 2011, Plaintiff amended his complaint to include Tobias as an additional Defendant.[1]

In his complaint, Plaintiff alleges that on March 12, 2011, while in the course and scope of his employment with Ensco as a seaman and member of the crew of the mobile offshore drilling vessel, ENSCO 82, he was required to perform work aboard the M/V MS. CHRISTINE.[2] Plaintiff asserts that he and fellow Ensco roustabout, Jonathan Anderson ("Mr. Anderson"), were sent to the M/V MS. CHRISTINE to assist with a backloading operation, which involved moving grocery boxes by crane from the ENSCO 82 to the M/V MS. CHRISTINE.[3] According to Plaintiff, he was holding the taglines on the grocery box, when the box suddenly swung towards him, causing him to fall to the deck. Plaintiff alleges that as a result of the fall, he sustained "severe and permanently

---

[1] (Rec. Doc. 8) The original and amended complaints allege the same causes of action for each Defendant. As such, they are generally referenced as "the complaint," and their allegations are referenced as one set of allegations.

[2] (Rec. Doc. 8, p. 1, ¶¶ 3, 4) Plaintiff asserts that, at all times relevant to the complaint, the ENSCO 82 was owned, chartered, and manned by Ensco, and it was also operated at the direction of Ensco. (Rec. Doc. 1, p. 2, ¶ 5) He further alleges that the vessel, M/V MS. CHRISTINE, an offshore crew and supply vessel, was owned, chartered, manned, and operated by Tobias. (Rec. Doc. 8, p. 1, ¶ 2)

[3] The crane was located on the ENSCO 82 at the time of the alleged accident.

disabling injuries," specifically, to his spine and extremities. (Rec. Doc. 1, pp. 2-4, ¶¶ 6,10); (Rec. Doc. 8, p. 1, ¶ 3)

Plaintiff claims his injuries were proximately caused by the negligence of Ensco and Tobias, their employees, officers, and crew in failing to "supervise, direct, and control operations," "provide or utilize safe and appropriate equipment," or provide him with "adequate assistant" and a safe work environment. (Rec. Doc. 8, p. 2, ¶ 7) Plaintiff also asserts that Defendants Ensco and Tobias had a duty to provide a "competent and adequate" crew, proper safety gear, "safe appurtenances and equipment," and a seaworthy vessel. (Rec. Doc. 8, p. 3, ¶ 8) He alleges that his injuries were proximately caused by Ensco and Tobias's failure to perform these duties.

Plaintiff claims that as a result of his injuries, he has been unable to return to his former employment. (Rec. Doc. 1, pp. 3-4, ¶ 10) He asserts that he has incurred loss of wages and medical expenses, past, present, and future, and is, therefore, entitled to reasonable damages. (Rec. Doc. 1, pp. 3-4, ¶ 10) He also asserts that he is entitled to maintenance and cure from Ensco during his period of disability in the amount of fifty dollars per day. (Rec. Doc. 1, p. 4, ¶¶ 11-12) Due to Ensco's alleged failure to pay maintenance and cure benefits, Plaintiff

also seeks punitive damages and attorney's fees. (Rec. Doc. 1, pp. 4-5, ¶¶ 13-14)

On September 21, 2012, after completing the Plaintiff's deposition as well as the depositions of the Ensco and Tobias employees alleged to have been at the scene of the accident, Ensco filed the instant motion. Tobias responded in opposition to Ensco's motion on October 2, 2012. Plaintiff responded to Ensco's motion on October 9, 2012.

**PARTIES' ARGUMENTS**

Ensco argues that it is entitled to summary judgment on Plaintiff's unseaworthiness claim for several reasons. First, Ensco asserts that because Plaintiff was located on the M/V MS. CHRISTINE at the time of his alleged accident, the unseaworthiness of the ENSCO 82 is not at issue.[4] Therefore, Ensco asserts that for an unseaworthy condition to exist against Ensco, it would have to be by virtue of a defect in the crane that was being used for the backloading operation, or in the performance of the backloading operation itself.

Second, Ensco maintains that even if the accident did occur, there is no question of material fact pertaining to the crane's

---

[4] In their briefs, none of the parties dispute the fact that the unseaworthiness of the ENSCO 82 is not an issue. Rather, their responses focus solely on the conditions surrounding the accident itself, which occurred on the M/V MS. CHRISTINE.

4

seaworthiness, because the crane worked properly, and the Ensco employees involved in the backloading operation performed their jobs competently. To support this argument, Ensco contends that Plaintiff admitted in his deposition that, at the time of the alleged accident, the crane worked properly and the load came down where he expected. Ensco also claims that the proper number of people were used to operate the crane. Ensco argues that no one has refuted Plaintiff's testimony that he could not identify anything the other Ensco employees did wrong on the date of the accident.

Third, Ensco disputes that alleged accident ever occurred. Ensco asserts that Plaintiff (1) did not report an injury upon completion of the backloading operation; (2) signed a Certificate of No Injury at the end of his shift; and (3) that no one else witnessed the alleged accident and/or problems with the backloading of the grocery box.

Furthermore, Ensco asserts that even if Plaintiff's version of the facts is taken as true, he has only established an isolated incident of operational negligence by the crane operator, which is insufficient to sustain a claim for unseaworthiness. Ensco argues that in order to establish a claim for unseaworthiness, Plaintiff must show a pattern of negligence,

5

not just an isolated instance of negligence. Ensco contends that isolated instances of negligence only give rise to a Jones Act negligence claim, not a condition of unseaworthiness.

In response, Plaintiff asserts that Mr. Anderson's testimony confirms that the accident occurred. Plaintiff reports that Mr. Anderson testified that he heard a loud sound, and when he turned around Plaintiff was on the deck. Plaintiff further avers that even if Mr. Anderson's testimony does not confirm that the accident occurred, it does raise a question of material fact as to the unseaworthiness of the crane's operation, thereby, precluding summary judgment. Plaintiff argues that Ensco "attempts to gloss over" the issue of unsafe operation conducted by an unfit crew by claiming that everything worked fine. Plaintiff asserts that his own injuries show that everything did not work fine, and that Plaintiff's testimony of the accident cannot be discarded merely because it is disputed by other witnesses' testimony. Plaintiff claims that Ensco's primary argument for summary judgment is predicated on the false assertion that the testimony of the other witnesses present at the time of the accident should be considered more credible than Plaintiff's testimony. Plaintiff asserts that this is a question of credibility that should be decided at trial.

Plaintiff also claims that the crane operator engaged in an unsafe method of work by lifting the load off the deck of the M/V MS. CHRISTINE after it had already landed, and that this unsafe method of operation directly caused his injuries. Furthermore, Plaintiff points to a previous incident where the crane operator performed his job negligently, which caused property damage but no physical injuries.[5] Plaintiff asserts that this pattern of unsafe work method constituted an unseaworthy condition.

In Tobias' opposition, it argues that Plaintiff does have a claim against Ensco for unseaworthiness, because Plaintiff was permanently assigned to the ENSCO 82 as an employee of Ensco and, consequently, Ensco owed Plaintiff a duty of seaworthiness. Tobias argues that, to the extent that the Plaintiff's version of the facts are taken as true, which Tobias also denies, a reasonable fact finder could find that (1) the grocery box being moved after being set on the deck of the M/V MS. CHRISTINE was attributable to the crane itself; (2) the procedure used by Ensco was improper; (3) that Ensco did not have sufficient personnel

---

[5] The crane operator acknowledged this previous incident in his deposition. He explained that several months before the accident, he bumped a vent on a rig while picking up some casing. He asserted that the reason why he bumped the vent was because he was in a blind spot, and the Plaintiff, as a flagger, was supposed to be directing him out of the blind spot but, instead, directed him in a way that caused him to bump the vent. The crane operator testified that no incident report was filed and no damage resulted from this event. (Pl.'s Ex. 3, Rec. Doc. 63-3, p. 84, ll 1-15)

conducting the backloading operation; and/or (4) that any number of other conditions make the ENSCO 82 unseaworthy.[6]

**DISCUSSION**

**A. Legal Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable

---

[6] Tobias also asserts that Plaintiff does not have an unseaworthiness claim against the M/V MS. CHRISTINE, because Plaintiff was not a seaman permanently assigned to the vessel. Therefore, Tobias requests that this Court enter summary judgment and dismiss Plaintiff's claim for unseaworthiness against it. Tobias' request is not properly before the Court at this time, nor has Tobias provided any legal support for its statement. As such, the Court declines to make any finding on Tobias' request as presented in its opposition.

8

jury could not return a verdict for the nonmoving party." <u>Delta</u>, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. <u>See</u> <u>Celotex</u>, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. <u>See</u> <u>id.</u> at 324. The nonmovant may not rest upon the pleadings, but must identify

specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

**B. Applicable Law**

In order to prevail on a claim for unseaworthiness, the plaintiff must show that the vessel owner has failed to supply a vessel or vessel appurtenances that are reasonably fit for their intended use. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499 (1971). Apart from the physical condition of the vessel, an unsafe method of work can render a vessel unseaworthy. Id. However, an "isolated, personal negligent act" is not sufficient to give rise to a claim for unseaworthiness because that would "subvert the fundamental distinction between unseaworthiness and negligence." Id. at 500. The United States Fifth Circuit Court of Appeals has construed the Usner holding as follows,

> A longshoreman or one of his fellows might engage in a *congeries* of negligent acts that are of such a character or that continue for such a length of time that they become related to the status of the vessel. That *congeries* of acts might create a "condition" of unseaworthiness, so that an individual act of negligence within or after the *congeries* might give rise to liability under the unseaworthiness doctrine.

10

> However, if the negligent act of a longshoreman is not part of any *congeries* of negligent acts connected to the status of the vessel or to its loading but is rather an isolated "instantaneous" act of negligence within an otherwise seaworthy method of loading on an otherwise seaworthy vessel, then that one act of negligence by the longshoreman or his fellows will not render the vessel unseaworthy.

Robinson v. Showa Kaiun K. K., 451 F.2d 688, 690 (5th Cir. 1971).

Overall, to establish a claim of unseaworthiness for operational negligence, a plaintiff must prove that the negligence "[is] 'pervasive' or repeated frequently for it to rise to the level of an unseaworthy condition." Vendetto v. Sonat Offshore Drilling Co., 97-3103 (La. 1/20/99), 725 So. 2d 474, 481(citing Usner, 400 U.S. at 498; Robinson, 451 F.2d at 690).

**C. Analysis**

As a preliminary matter, the Court finds there is a genuine issue of material fact as to whether or not the alleged accident actually occurred. The Plaintiff has clearly alleged that he was injured as a result of an accident, and he has also testified in deposition that an accident occurred. As such, Ensco's arguments

regarding contradictory testimony go to the credibility of the witnesses and the ultimate weight of the evidence, which is reserved for trial. The Court now turns to Ensco's argument that the alleged accident was an isolated instance of negligence, rather than a condition of unseaworthiness.

In the instant action, the Court finds that the crane operator's alleged actions constitute an isolated instance of negligence that does not give rise to a claim for unseaworthiness. In making this finding, the Court finds the facts of the Usner case, as well as the facts of Daughdrill v. Ocean Drilling & Exploration Co., 709 F.Supp. 710, 712 (E.D. La. 1989), persuasive.

In Usner, a longshoreman was injured while loading cargo aboard a vessel. 400 U.S. at 495. During the loading operation, the injured longshoreman was required to secure bundles of cargo to a sling each time the bundles were lowered from the ship's boom by the winch operator. Id. After effectively conducting the operation for a prolonged period of time, an occasion arose where the winch operator did not sufficiently lower the sling. Id. When the winch operator tried to correct the error he lowered the sling too quickly and too far, causing the longshoreman to be

knocked to the deck of the vessel. Id. The Supreme Court found the longshoreman's injuries were not caused by a "condition of the ship, her appurtenances, her cargo, or her crew, but [rather by] the isolated, personal negligent act" of the winch operator. Id. at 500. The Court explained that a third party's "single and wholly unforeseeable" acts of negligence are not sufficient to give rise to liability of the shipowner for unseaworthiness. Id.

Likewise, in Daughdrill, the court considered a similar factual scenario on a motion by plaintiff for judgment notwithstanding the verdict. 709 F. Supp. at 712. In Daughdrill, the plaintiff was injured when a crane operator lowered a personnel basket, in which the plaintiff was located, too hard onto the deck. Id. Although the plaintiff was able to point to one or two other occasions over the prior ten years when the crane operator may have made the same mistake, the court determined that this was not sufficient to create a condition of unseaworthiness.[7] Therefore, the court found that the act of the crane operator was considered to be an isolated act of

---

[7] Id. In Daughdrill, the plaintiff alleged that the crane operator has committed the same error two times in the previous ten years. Id. The court found that because plaintiff could not conclusively show that it was the same crane operator on both occasions, and because the plaintiff had actually stated that the crane operator was a "good" crane operator, that the plaintiff had failed to show anything more than an isolated instance of negligence. Id.

13

negligence, and the Court declined to reverse a directed verdict in favor of the vessel owner on the claim for unseaworthiness. Id.

In the instant case, Plaintiff alleges his injuries were caused when a several hundred pound grocery box that was being transferred from the ENSCO 82 to the M/V MS. CHRISTINE swung at him after being lifted up off the deck of the M/V MS. CHRISTINE. Similar to the accident in Usner, Plaintiff's deposition testimony reveals that up until the point in which the actual grocery box "suddenly and without warning" swung towards him, the crane operator had been steadily and correctly lowering the grocery box onto the ship. (Rec. Doc. 63, p. 2); (Def. Ex. A, Rec. Doc. 55-4, pp. 247, 249 ("Q. All right. You're watching it come down and load is perfect vis-a-vis the boat, as far as you're concerned; correct? A. Correct. . . . Q. Well, [the grocery box is placed] exactly where you thought it was going to go; correct? A. Correct.")) Thereby indicating that the act was an isolated incidence of negligence, rather than due to an unseaworthy condition. Furthermore, similar to the crane operator in Daughdrill, despite sixteen years of operating a crane, the crane operator in the instant case only has one reported prior

14

incidence of negligence.[8] While Plaintiff argues in his opposition that he will "testify at trial that [the crane operator] had other, previous, mishaps," the record before the Court on summary judgment only demonstrates that the crane operator had, at most, one previous incident. See id. Plaintiff has not presented the Court with any other evidence of prior, repeated incidents. One to two incidents during a span of sixteen years hardly rises to the level of "congeries" of negligent acts or negligence that is "pervasive or repeated frequently." As such, the Court finds that Plaintiff has failed to show that an unseaworthy condition existed.

Furthermore, although Plaintiff alleges in his complaint that his injuries were proximately caused by Ensco's failure to provide a competent and adequate crew, proper safety gear, safe appurtenances and equipment, and a seaworthy vessel, the Plaintiff has failed to come forward with any evidence for any of

---

[8]
>   Q. Have you ever had an incident where you, as a crane operator, have caused damage on a vessel or struck a vessel? A. I bumped a vent but nothing was damaged. In fact, [Plaintiff] was over there flagging when I bumped it. That was a couple of months before this right here happened. . . . Q. On a crewboat? A. No, that was on the rig. . . . Q. I just want to talk to you a little bit about your background and whether you've been written up by ENSCO for any actions as a crane operator. A. No. Q. What about with your previous company? Q. No. Q. Have you ever been involved in crane operations where anyone else has asserted they were injured other than Mr. Magee? A. No.

(Def. Ex. A, Rec. Doc. 62-1, pp. 83 - 85)

these other possible claims for unseaworthiness. In particular, Plaintiff has not presented any facts which support an allegation that the crane was not operating properly the evening of the incident.  In fact, the crane operator actually testified in deposition that the crane functioned properly on the night in question and that he did not have any problems with it. (Ensco Ex. C, Rec. Doc. 55-3, pp. 49-50); (Ensco Ex. D, Rec. Doc. 55-3, p. 30)  Therefore, the issue of the seaworthiness of the crane itself is not in controversy. Moreover, Plaintiff also admits in his deposition that he could not identify anything that Mr. Anderson, the other Ensco roustabout assigned to the backloading operation, did wrong. (Ensco Ex. A, Rec. Doc. 55-3, pp. 449-50) As such, there is no issue of material fact as to the unsafe work practices of Mr. Anderson. Lastly, the Plaintiff has also failed to present any facts which indicate that the training (or lack thereof) of the crew or the safety gear provided to the crew created an unseaworthy condition. Accordingly,

**IT IS ORDERED** that Ensco's motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's unseaworthiness claims against Ensco are **DISMISSED with prejudice**.

New Orleans, Louisiana this 20th day of November, 2012.

                                                CARL J. BARBIER  
                                                UNITED STATES DISTRICT JUDGE