UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MAGEE                                          CIVIL ACTION

VERSUS                                         NO: 11-1351

ENSCO OFFSHORE CO.                             SECTION: "J" (2)

**ORDER AND REASONS**

Before the Court are Plaintiff's **Motion for Summary Judgment to Enforce Settlement Agreement (Rec. Doc. 70)**, Defendant's opposition thereto **(Rec. Doc. 72)**, Plaintiff's reply to same **(Rec. Doc. 77)**, and Defendant's *surreply* **(Rec. Doc. 81)**. Plaintiff's motion was set for hearing on April 10, 2013, on the briefs. The Court, having considered the motion and memoranda of counsel, the record, and the applicable law, finds that Plaintiff's motion should be **GRANTED** for the reasons set forth more fully below.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This suit arises out of maintenance and cure and unseaworthiness claims that were brought under the Jones Act and general maritime law. Plaintiff, Kendall Magee, filed his

1

Complaint in this Court on June 8, 2011, naming his employer, ENSCO Offshore Company ("ENSCO"), and the owner and operator of the M/V MS. CHRISTINE, Tobias Inc., as Defendants. Plaintiff asserts that he sustained injuries to his lower back when he fell on the M/V MS. CHRISTINE during the offloading process.

On January 7, 2013, the parties participated in a mediation which resulted in the settlement of this case. Following mediation, a dispute arose between Plaintiff and ENSCO about the payment of certain medical bills that were incurred by Plaintiff and paid for by Diagnostic Management Affiliates PPO, LLC ("DMA"). Specifically, the disputed medical bills concern $65,959.53 worth of costs for hospitalization, testing, and surgery associated with Plaintiff's low back. Pl.'s Mem. in Supp., Rec. Doc. 70-1, p. 5. Likewise, Plaintiff's counsel paid $10,000 to DMA as a deposit for Plaintiff to receive these services. Pl.'s Mem. in Supp., Rec. Doc. 70-1, p. 5. ENSCO has refused to pay DMA the full amount due because it believes that some of these charges are outside the scope of the parties' settlement agreement.[1] In particular, ENSCO notes that while the

___

[1] The full amount due is $69,599.53 due to DMA and $10,000 due to Plaintiff's attorney for a down payment that he paid to DMA. Ex. 13 to Pl.'s Mot., Rec. Doc. 70-14, p. 2. The additional $3,298.42 included in this amount comes from a service fee charged by DMA. DMA had agreed to waive this fee if the full amount of the bill was paid by February. Plaintiff asserts that because it is ENSCO's own delay which has caused this fee to accrue, it should be ENSCO's

medical providers have billed for $75,959.53, DMA, through various agreements that it has with the providers, was able to obtain the services at a discounted rate. Thus, ENSCO asserts that under the terms of the settlement, it should only have to reimburse the actual sums that DMA paid to the medical providers. It contends that it should not have to pay the additional amount that was billed because such amount merely represents a profit for DMA and not a "reasonable" medical expense. As a result of this dispute, Plaintiff has refused to accept any partial payments of these funds by ENSCO. Plaintiff has also refused to accept a full payment of a separate amount ($50,000) that ENSCO owes directly to Plaintiff under the settlement agreement. The pertinent written terms of the settlement are as follows:

> For and in consideration of the settlement, release, and dismissal of any and all claims with prejudice, Plaintiff will accept, and Defendants will pay, the sums of ENSCO OFFSHORE COMPANY fifty thousand and No/100 . . . . Settlement to be funded within best efforts within 14 days of this date. . . .

---

responsibility to pay the fee. Accordingly, the total amount due is: $65,959.53 (to DMA for medical services) plus $10,000 (to Plaintiff's counsel for deposit paid to DMA) which equals the total $75,959.53 medical bill in question. Additionally, Plaintiff seeks an addition $3,298.42 to cover a DMA service fee.

Ensco agrees to assume responsibility for all low back related cure. Maintenance and cure shall terminate today. Plaintiff agrees to not seek reemployment with Ensco. . . . Ensco agrees to reimburse plaintiffs counsel for any amount paid for cure expenses related to the low back within the same period of time upon receipt of cancelled checks or other proof of payment.

Pl.'s Ex. 12 to Mot., Rec. Doc. 70-13, p. 1.

Plaintiff filed the instant motion seeking enforcement of the settlement on March 21, 2013. Defendant replied in opposition on April 3, 2013. Plaintiff filed a reply thereto on April 10, 2013, with Defendant filing a surreply on April 12, 2013.

### THE PARTIES' ARGUMENTS

In addition to the aforementioned arguments, the parties also make the following contentions. Plaintiff argues that under the terms of the settlement agreement, ENSCO must pay the full amount billed by DMA. Plaintiff contends that the maximum cost of all low back treatment was disclosed to ENSCO before settlement

and at the mediation.[2] Plaintiff asserts that ENSCO knew that information and still agreed to undertake payment of all low back related cure without making any reservations. Thus, Plaintiff requests that this Court order ENSCO to comply with the settlement agreement and to pay the full amount of the DMA medical bill. Likewise, Plaintiff also notes that because of ENSCO's dilatory actions, DMA has charged Plaintiff an additional $3,298.42 fee. Plaintiff requests that ENSCO also be required to pay this fee.

ENSCO argues that Plaintiff does not have a cause of action against ENSCO with respect to the disputed medical bills. Specifically, ENSCO contends that in Plaintiff's original contract with DMA, Plaintiff assigned all of his rights and interests in payment of the medical bills to DMA. Thus, ENSCO asserts that this Court should deny Plaintiff's action and let ENSCO continue to negotiate with DMA for the payments. Second, ENSCO argues that if Plaintiff had disclosed the DMA mark-ups to ENSCO before the mediation, it would not have agreed to pay them. Thus, ENSCO argues that there was no meeting of the minds because

---

[2] Plaintiff specifically notes that at the mediation it presented ENSCO with a "detailed MEDICAL COST CHART with attached medical bills." Pl.'s Mem. in Supp., Rec. Doc. 70-1, p. 4. Plaintiff asserts that this chart included the disputed costs and that ENSCO was privy to it before signing the settlement agreement. Pl.'s Mem. in Supp., Rec. Doc. 70-1, pp. 4-5.

Plaintiff withheld material information from it. Likewise, ENSCO argues that any mark-ups by DMA cannot be characterized as a medical expense or as cure because they are not "reasonable" or "necessary" medical expenses.

## DISCUSSION

"Federal courts possess the inherent power to enforce agreements entered into in settlement of litigation pending before them." Smith v. Ford Motor Co., No. 98-2299, 1999 WL 649636, at *2 (E.D. La. Aug. 24, 1999) (citing Eastern Energy, Inc. v. Unico Oil & Gas, Inc., 861 F.2d 1379, 1380 (5th Cir.1988)). Where a federal court has dismissed a case, it may enforce a settlement agreement via its ancillary jurisdiction as long as its dismissal order specifically provides for enforcement of the settlement. Hospitality House v. Gilbert, 298 F.3d 424, 430 (5th Cir. 2002) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 378-81 (1994)). In the instant case, Plaintiff filed his motion to enforce the settlement before the Court's jurisdiction over the settlement expired; therefore, this motion is properly before the Court, and the Court may enforce the settlement at issue.[3] "Questions regarding the enforceability or

---

[3] This Court issued a sixty day dismissal order on January 15, 2013, which retained jurisdiction for the purposes of enforcing the settlement for a period of sixty days. January 15, 2013 Order Dismissing Case, Rec. Doc. 67. On March 6, 2013, Plaintiff filed a motion requesting that this Court extend its jurisdiction

validity of [settlement] agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law. Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 389 (5th Cir. 1984) (citing Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207 (5th Cir.1981)). Because the claims before the Court are brought under general maritime law, the Court applies federal maritime law to interpret and enforce the settlement agreement.

When interpreting a contract under general maritime law, the "court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous." Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 332-33 (5th Cir. 1981) (citing Hicks v. Ocean Drilling and Exploration Co., 512 F.2d 817, 825 (5th Cir. 1975)). The "basic principle of contract interpretation in [maritime] law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." Chembulk Trading LLC v. Chemex Ltd., 393 F.3d 550, 555 (5th Cir. 2004) (citing Foster Wheeler Energy Corp. v. An

---

for an additional thirty days. Pl.'s Mot. for Ext. Deadlines, Rec. Doc. 68. The motion was unopposed and this Court granted it on March 8, 2013. March 8, 2013 Order, Rec. Doc. 69. Plaintiff filed the instant Motion to Enforce the Settlement on March 21, 2013, well within the Court's extended period of jurisdiction over the settlement.

Ning Jiang MV, 383 F.3d 349, 354 (5th Cir.2004)). Words in a contract are given their plain meaning as understood by a reasonable person. Sander v. Alexander Richardson Inv.'s, 334 F.3d 712, 716 (8th Cir. 2003).

In the instant case, the plain language of the contract provides that ENSCO will "assume responsibility for all low back related cure." Pl.'s Ex. 12 to Mot., Rec. Doc. 70-13, p. 1. "Cure" is generally defined as "the employer's obligation to pay for medical expenses for sick or injured seaman." 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-32, at 522 (5th ed. 2011); Matter of Cooper/T. Smith Stevedoring Co., Inc., 942 F. Supp. 267, 269 (E.D. La. 1996) (defining cure as a seaman's right to necessary medical expenses). An employer does not have to pay for medical expenses when they are "overly expensive," "unnecessary," or "excessive." Matter of Cooper, 942 F. Supp. at 269-70. Such expenses must be reasonable. Id. Thus, as written, the settlement agreement indicates that the parties intended for ENSCO to assume responsibility for all low back related 'necessary medical expenses.' As such, the question before this Court is: do the disputed medical bills constitute 'necessary medical expenses'? This Court finds that they do.

The Court makes this determination based on the following.

First, the disputed expenses are expenses that were already incurred by Plaintiff at the time of the settlement and, moreover, ENSCO was aware that it might be responsible for the full amount of these expenses—$75,959.53—at the time that it signed the settlement agreement.[4] Therefore, if ENSCO was truly concerned about its ability to negotiate these costs down to what *it* deemed to be a "reasonable" price, it could have provided for that in the agreement.

Second, while ENSCO makes much ado about the fact that it was not aware of DMA's role in the payment process, the Court does not find that ENSCO's lack of knowledge was material to the negotiation of the settlement agreement. As has been noted, ENSCO was fully aware of the maximum amount of medical expenses that it would have to pay at the time that the settlement was negotiated. Thus, when ENSCO later learned that it would be paying those expenses to DMA rather than to the individual provider, there was no material change. ENSCO still owed the same amount of money that it agreed to pay at the time of the settlement, it simply owed the payment to a different entity.

---

[4] While ENSCO has disputed that it was not aware of the arrangement with DMA, it has not disputed Plaintiff's assertion that ENSCO was presented with the MEDICAL COST CHART at the mediation, which outlined all of the medical expenses that Plaintiff had incurred. The MEDICAL COST CHART listed the then current disputed expenses. See Ex. 11 to Pl.'s Mot., Rec. Doc. 70-12.

Third, and most importantly, Plaintiff was only able to obtain the disputed medical services by contracting with DMA for their payment. Pl.'s Mem. in Supp., Rec. Doc. 70-1, p. 3 ("Accordingly, in order to obtain the recommended testing and treatment, plaintiff contracted with [DMA]."). Thus, it appears that the amounts DMA billed Plaintiff are both reasonable and necessary. The record reflects that after Plaintiff sustained his injuries he required medical care. Pl.'s Ex.'s 1, 2, 3, & 5 to Mot., Rec. Docs. 70-2 to70-4, 70-5.  ENSCO refused to pay for Plaintiff's medical care. Pl.'s Ex. 7 to Mot., Rec. Doc. 70-8. As a result, Plaintiff entered into an agreement with DMA by which DMA would provide the Plaintiff with the necessary medical care. The agreement provided that Plaintiff would have to repay the costs associated with testing and surgery to DMA.[5] DMA was then able to obtain Plaintiff's medical care at reduced rates. Ex. 10 to Pl.'s Mot., Rec. Doc. 70-11. As a result, Plaintiff obtained

---

[5] Pl.'s Mem. in Supp., Rec. Doc. 70-1, p. 4 ("The costs associated with the testing and surgery were subsequently paid by DMA, and plaintiff has agreed to repay these costs from any proceeds recovered through the litigation."); Ex. 10 to Pl.'s Mot., Rec. Doc. 70-11 ("I understand and agree that I will pay DMA the full customary and usual charges of DMA's healthcare providers and that the difference between what I pay DMA and what DMA pays its providers is DMA's income.").The Court also notes that because Plaintiff has agreed to repay these costs, regardless of any negotiations between DMA and ENSCO, Plaintiff will ultimately bare the burden of paying any fees to DMA if  ENSCO does not. Thus, the Court does not find that ENSCO's assignment argument is valid — Plaintiff has a tangible interest in the amount that ENSCO pays to DMA, and Plaintiff is within his right to bring a cause of action to enforce the agreement that he, not DMA, entered into.

his medical care and has to pay for this care in the amount that DMA charges—$75,959.53.[6] Plaintiff could not have negotiated his medical care for the lesser amounts that ENSCO seeks to pay now.[7] Accordingly, the amount charged by DMA is the reasonable and necessary amount of cure and is covered by the settlement agreement.[8]

Lastly, the Court also notes that it is ENSCO's own dilatory actions that have caused Plaintiff to incur a $3,298.42 service fee from DMA. As such, the Court finds that it is ENSCO's responsibility to pay that fee as well. The Court does not find that an award of attorney's fees and costs are appropriate in this instance. For the forgoing reasons,

**IT IS ORDERED** that Plaintiff's motion is **GRANTED**.

**IT IS FURTHER ORDERED** that ENSCO Offshore Co. shall immediately pay $69,257.95 ($6, 959.53 + 3, 298.42) to Diagnostic

---

[6] Technically, the total amount now charged to Plaintiff is $69,257.95 since $10,000 was already paid by Plaintiff's attorney and is owed directly to him.

[7] The Court notes that if ENSCO had wanted to avoid higher costs, it could have chosen to pay for Plaintiff's medical expenses up-front, thereby allowing it to negotiate costs at its own provider rates. Likewise, it could have specifically chosen to limit the amount of cure in the settlement agreement to its own negotiated rates.

[8] This includes the $65,959.53 as well as the $10,000 fee incurred by Plaintiff's attorney. The Court notes that the settlement also plainly provided that ENSCO would reimburse Plaintiff's counsel for any cure expenses that counsel incurred, i.e. the $10,000.

Management Affiliates PPO, LLC.

**IT IS FURTHER ORDERED** that ENSCO Offshore Co. shall immediately pay $10,000 to Plaintiff's counsel, John Munoz.

**IT IS FURTHER ORDERED** that ENSCO Offshore Co. shall immediately pay $50,000 to Plaintiff.

New Orleans, Louisiana this 30th day of May, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE